S. Kimberley **BELSHÉ**, M.D., Department of Health Services, Plaintiff,

v.

**LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, Defendant.**

No. C–93–0657 SBA.

United States District Court, N.D. California.

Nov. 21, 1994.

John C. Porter, Deputy Atty. Gen., Daniel E. Lungren, Atty. Gen. of the State of Cal., Stephanie Wald, Supervising Deputy Atty. Gen., Oakland, CA, for plaintiff.

James P. Watson Bruce K. Leigh, Stanton, Kay & Watson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

ARMSTRONG, District Judge.

Presently before this Court is Plaintiff's motion for summary judgment and Defen-

dant's cross-motion for summary judgment. Having read and considered all matters submitted in connection with these motions, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.[1]

## BACKGROUND

Plaintiff seeks a declaratory judgment to establish that a state law governing reimbursement to the state Medicaid program by an ERISA-governed benefit plan overrides the claim submission time limit imposed by the benefit plan. Jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B).

The action is brought by the director of the Department of Health and Human Services (hereinafter "DHS") of the State of California against the Laborers Health and Welfare Trust Fund for Northern California (hereinafter "Laborers"). DHS administers Medi–Cal, which is the state Medicaid program. Laborers is an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), which was organized through collective bargaining.

As a condition of federal funding, state Medicaid agencies must provide for mandatory assignment of rights of payment for medical care owed to recipients under a third party health plan. 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(A). State Medicaid agencies must also submit a plan for pursuing claims against such third parties. 42 U.S.C. § 1396a(a)(25)(A)(ii). California has implemented these requirements into state law. Cal. Welf. & Inst.Code §§ 10022, 10024, 14023 and 14024.

The state law at issue in the instant matter is California Welfare and Institutions Code Section 10022, which provides that Medi–Cal shall be entitled to the subrogation rights of a Medi–Cal beneficiary under a third party health care plan. The statute further provides that an action to enforce this right may

be brought within three years from the date medical service was rendered to the beneficiary.

The Laborers benefit plan requires claims to be submitted no later than one year after the date of service. For various reasons, Medi–Cal does not always ascertain within one year of service whether a Medi–Cal beneficiary has rights under a third party health care plan that Medi–Cal is entitled to by subrogation. For more than three years prior to the filing of this action, DHS has submitted claims to Laborers within three years after services were provided to Laborers beneficiaries, but after Laborers' one-year claim submission deadline had passed. Laborers has denied such demands for reimbursement as untimely.[2] DHS seeks a declaratory judgment that establishes that California Welfare and Institutions Code Section 10022 authorizes DHS to submit claims to Laborers for up to three years after medical service is rendered to a Laborers beneficiary. Laborers in turn seeks a judgment that Section 10022 does not literally or impliedly preclude the application of a benefit plan's claim submission time limits, and that ERISA Section 514(a)[3] preempts DHS's attempt to override the internal claims processing provisions of Laborers' plan.

The parties have brought their motions for summary judgment so that the Court may now resolve the disputed legal issues before it. Both parties agree that no factual issues are in dispute, and that this action may be appropriately resolved at this time by summary judgment.

## DISCUSSION

### A. Legal Standard

The Employee Retirement Income Security Act of 1974 ("ERISA") was designed to protect the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d

---

1. Pursuant to Local Rule 220–1, the Court finds adjudication of these motions is appropriate without oral argument.

2. The face amount of these rejected claims is over $500,000. Due to policy exclusions such as

deductibles, co-payments, and coverage limits, the net value of these claims is likely to be considerably less.

3. 29 U.S.C. § 1144(a).

490 (1983). ERISA's comprehensive regulatory scheme was intended to establish the regulation of benefit plans as "exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). In order to maintain federal control over benefit plan regulation, ERISA contains a "very broad preemption clause." *Hydrostorage, Inc. v. Northern Cal. Boilermakers,* 891 F.2d 719, 726 (9th Cir. 1989), *cert. denied,* 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

■ ERISA section 514(a) states that "Except as provided in subsection (b) of this section," ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title...." 29 U.S.C. § 1144(a). A law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900.

ERISA's broad preemption of state laws is qualified by ERISA section 514(b)(2)(A), the so-called "saving clause" or "savings clause": "Except as provided in subparagraph (B) [section 514(b)(2)(B)], nothing in this subchapter shall be construed to except or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

The Supreme Court has noted that ERISA's preemption provisions "perhaps are not a model of legislative drafting," in that the savings clause appears to return to the states much of the power taken away by § 514(a). *Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 739–40, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985). To further complicate matters, the savings clause is in turn qualified by section 514(b)(2)(B), known as the "deemer clause," which states that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

■ A recent Supreme Court case interpreted the deemer clause to make a distinction between self-funded ERISA plans and insured ERISA plans,[4] excluding self-funded plans from the reach of the saving clause because such plans may not be deemed to be insurance companies under the deemer clause. *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990). State laws directed toward self-funded plans are thus preempted "because they relate to an employee benefit plan but are not 'saved' because they do not regulate insurance." *Id.* State laws that directly regulate insurance are "saved," but do not reach self-funded plans because such plans may not be deemed to be insurance companies. *Id.* Applying this distinction, the Court held that a state antisubrogation law was saved from preemption by the saving clause, but that a self-funded health care plan was exempt from the regulation under the deemer clause. *Id.* at 60–61, 111 S.Ct. at 408–09.

Unfortunately, the subject of ERISA preemption does not end here. Two further provisions of ERISA § 514 arguably apply to the instant motion. The first is § 514(b)(8):

Subsection (a) of this section shall not be construed to preclude any State cause of action—

(A) with respect to which the State exercises its acquired rights under section 1169(b)(3) of this title with respect to a group health plan (as defined in section 1167(1) of this title), or

(B) for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Security Act [42 U.S.C. § 1396 et seq.] which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.

29 U.S.C. § 1144(b)(8) (effective August 10, 1993). The original version of ERISA

---

4. This distinction was also recognized by the Court in *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393.

§ 514(b)(8) may also be applicable to the instant motion:

> Subsection (a) of this section shall not apply to any State law mandating that an employee benefit plan not include any provision which has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the employee benefit plan, because that individual is provided, or is eligible for, benefits or services pursuant to a plan under title XIX of the Social Security Act [42 U.S.C.A. § 1396 et seq.], to the extent such law is necessary for the State to be eligible to receive reimbursement under title XIX of that Act.

29 U.S.C. § 1144(b)(8) (effective October 1, 1986).

Section 514(b)(8) has been interpreted in only a single federal case, *Wisconsin Dep't of Health and Social Servs. v. Upholsterers Int'l Union Health and Welfare Fund*, 686 F.Supp. 708 (W.D.Wis.1988), in which the 1986 version was at issue. In *Upholsterers*, the district court found that § 514(b)(8) preserved from preemption a state law that provided that an insurance policy's benefits would be primary to benefits provided by the state Medicaid program. *Id.* at 716.[5]

■ The final relevant preemption provision of ERISA is § 514(d): "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C. 1144(d). Section 514(d) exempts from preemption state laws upon which federal laws depend for enforcement, but does not serve as a general saving clause. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104, 103 S.Ct. 2890, 2903, 77 L.Ed.2d 490 (1983).

## B. Application of Law

■ The state law at issue is California Welfare and Institutions Code Section 10022, which provides that:

> Each publicly funded health care program that furnishes or pays for health care services under this division to a person having private health care coverage shall be entitled to be subrogated to the rights that such person has against the carrier of such coverage to the extent of the health care services rendered. Such action may be brought within three years from the date that service was rendered such person.

Cal.Welf. & Inst.Code § 10022.

The law will fall under the general ERISA preemption provision of section 514(a) if it "relates to" an employee benefit plan. Using the broad definition of "relates to" that the Supreme Court provided in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), (*see supra*, part V.A), section 10022 clearly relates to an employee benefit plan. Thus, the law is initially preempted by ERISA, except as provided in § 514(b).

■ The next preemption provisions to apply are the savings clause and the deemer clause. Section 10022 will be "saved" from preemption if it is a law which regulates insurance. ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). Section 10022 regulates the terms of insurance contracts by invalidating any provisions that would prohibit subrogation by a beneficiary to Medi–Cal, and thus falls under the savings clause. *See FMC Corp. v. Holliday*, 498 U.S. 52, 60–61, 111 S.Ct. 403, 408–09, 112 L.Ed.2d 356 (1990). However, the deemer clause protects self-funded plans from the reach of the savings clause, because such plans cannot be deemed insurance companies for purposes of a law regulating insurance. ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B). Laborers' medical plans are self-insured. (Answer to First Am. Compl. for Declaratory Relief at 10.) Therefore, Laborers is exempt from a state law that regulates insurance, *FMC Corp. v. Holliday*, 498 U.S. at 61, 111

---

**5.** The state did not prevail in the action, however, because § 514(b)(8) was not yet effective against the benefit plan in the period for which the state sought reimbursement from the plan. *Id.*

S.Ct. at 409, except as may be provided in other subparagraphs of § 514.

The next relevant preemption provision of ERISA is § 514(b)(8), 29 U.S.C. § 1144(b)(8), which protects certain state causes of action relating to state Medicaid programs. Section 514(b)(8) (effective October 1, 1986) became effective against Laborers on April 7, 1989, three years after the date of its enactment.[6] The amended § 514(b)(8) became effective August 10, 1993. While both versions of the section must be considered, since DHS's suit seeks a declaratory judgment as to claims arising from service dates of 1989 to the present and beyond, the result under both versions is the same.

 Both the 1986 version and the 1993 version indicate that state laws relating to Medicaid reimbursement are precluded from preemption only to the extent that the state Medicaid program is exercising (as an assignee or subrogee) the rights of the beneficiary of the benefit plan. The 1986 version protects state laws that forbid an employee benefit plan from limiting the coverage of a person, "who would otherwise be covered or entitled to benefits or services *under the terms of the employee benefit plan,*" because that person is entitled to Medicaid benefits. 29 U.S.C. § 1144(b)(8) (effective October 1, 1986) (emphasis added). The 1986 version's qualifying language "under the terms of the employee benefit plan" confines the state Medicaid program's reimbursement rights to the plan beneficiary's rights, as defined under the plan. Similarly, the 1993 version speaks to the state's "acquired rights under section 1169(b)(3)," 29 U.S.C. § 1144(b)(8)(A), and "acquired rights" pursuant to Medicaid, 29 U.S.C. § 1144(b)(8)(B). Section 1169(b)(3) limits reimbursement in cases where the plan "has a legal liability." 29 U.S.C. § 1169(b)(3). The Medicaid statute providing for assignment of rights requires the

person receiving Medicaid to "assign any rights ... to support ... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). Thus, while both section 1169(b)(3) and section 1396k(a)(1)(A) allow the state to acquire the rights of beneficiaries of third party plans, neither statute allows the state to acquire greater rights than the beneficiaries have.

 DHS has cited no statutory or case law that allows a state Medicaid agency to acquire greater rights than a beneficiary has under a benefit plan. Nor has DHS demonstrated that a state-imposed three-year claim submission time limit is necessary to implement the assignment provisions mandated by Medicaid regulations. Since both versions of § 514(b)(8) protect state laws and state causes of action only to the extent that the state is enforcing its acquisition of the rights of the beneficiary, the section cannot serve to preclude from preemption a state law or state cause of action that seeks to enforce additional rights the state has attempted to acquire by statute rather than by subrogation.

Section 10022 of California's Welfare and Institution Code would fall into this unprotected category because it purports (according to the DHS) to give Medi–Cal the right to submit a claim to a benefit plan up to three years after a service is rendered, while a beneficiary of Laborers' plan only has the right to submit a claim up to one year after the service date. Section 10022 cannot be saved from preemption by ERISA § 514(b)(8).

 The final ERISA preemption provision that might protect § 10022 is ERISA § 514(d), which protects from preemption rules or regulations issued under federal law. The Supreme Court has interpreted this subsection as being limited to exempting provi-

---

**6.** The section became effective against plans maintained pursuant to collective bargaining agreements "on the later of (i) October 1, 1986; or (ii) the earlier of (I) the date on which the last of the collective bargaining agreements under which the plan is maintained, which were in effect on the date of the enactment of this Act, terminates ...; or (II) three years after the date of the enactment of this Act." Act of April 7,

1986, Pub.L. No. 99–272, § 9503(d)(2), 100 Stat. 207.

The last of Laborers' collective bargaining agreements in effect on April 7, 1986, expired on June 30, 1989, more than three years later. (Answer to First Am. Compl. for Declaratory Relief at 10.) Therefore, the effective date of § 514(b)(8) as to Laborers is three years after April 7, 1986, i.e. April 7, 1989.

222

sions of state laws necessary for the enforcement of federal laws. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104, 103 S.Ct. 2890, 2903, 77 L.Ed.2d 490 (1983).

DHS has illustrated the difficulty of ascertaining within one year whether a Medi–Cal recipient is entitled to coverage under a third party plan which DHS can then look to for reimbursement. However, DHS has not demonstrated that § 10022 is necessary to achieving the Medicaid requirement of pursuing reimbursement from third party insurers. The Medicaid provisions require state plans to take reasonable measures to "ascertain the *legal liability* of third parties," 42 U.S.C. § 1396a(a)(25)(A) (emphasis added), and to provide for the assignment to the state of "any rights" of a Medicaid-eligible person. 42 U.S.C. § 1396k(a)(1)(A). Medicaid regulations do not require that a state Medicaid plan include provisions that give the state greater rights than an individual would have under a third party plan. As § 10022 gives the state greater rights than it gives plan beneficiaries, the section is not a necessary state enactment to enforce the federal Medicaid regulations. Therefore, it cannot be saved from preemption by § 514(d).

Because § 10022 is preempted by ERISA, it is not necessary to reach the matter of interpreting § 10022 or DHS's arguments that Laborers must demonstrate prejudice in order to dismiss late claims and that Laborers' health plan is a contract of adhesion.

## CONCLUSION

Section 10022 falls under ERISA's general preemption clause as a state law relating to an employee benefit plan. Although there are several exceptions to the preemption clause, none of them apply to § 10022. Section 10022 therefore is preempted, and cannot apply to self-funded benefit plans. The practical effect of this conclusion is that DHS must submit its claims to Laborers within one year of the date of service to a Laborers beneficiary. Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's motion for summary judgment is DE-

NIED, and Defendant's cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

## JUDGMENT

In accordance with this Court's Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Cross–Motion for Summary Judgment, IT IS HEREBY ORDERED THAT final judgment be entered in favor of Defendant.

IT IS SO ORDERED.