759 A.2d 1238 (2000)
334 N.J. Super. 456
Jeffrey MORRONE and Patricia Morrone, his wife, Plaintiffs,
v.
Ronald F. THURING, Defendant.
Superior Court of New Jersey, Law Division, Bergen County.
Decided July 5, 2000.
*1239 Kenneth E. Ryan, Weiner Ryan Brogan, P.C., Passaic, appearing on behalf of plaintiffs (Jeffrey and Patricia Morrone).
John M. Russell, Hale Headrick Dewey Wolf Golwen Thronton & Chance, PLLC, appearing pro hac vice on behalf of the New England Employee Benefit Group.
Douglas M. Alba, Deputy Attorney General, John J. Farmer, Jr., Attorney General of New Jersey, appearing on behalf of the Division of Medical Assistance and Health Services (Medicaid).
Robert D. Curran, Jr., Curran & Curran, Paramus, appearing on behalf of Debra Segreto.
WALSH, J.S.C.
This matter is before the court on plaintiffs' motion to set the priority of liens against a personal injury settlement.
For the reasons set forth below, the law firm of Weiner Ryan Brogan, PC is entitled to a first claim for its fees and expenses against the $50,000.00 fund in court it created. The remainder of the fund in court will be distributed to the New England Employee Benefits Group ("TNE"). Since TNE's claim exhausts the fund, the State of New Jersey, as well as plaintiff's present and former wife will not recover.
I. INTRODUCTION
Plaintiff, Jeffery Morrone ("Morrone") was involved in a motorcycle accident on August 12, 1995 and suffered permanent catastrophic injuries. As a result, plaintiff is currently a patient at the King James Care and Rehabilitation Center, Somerset, New Jersey, and requires constant care.
At the time of the accident, Morrone was a participant in the TAM Metal Products, Inc. Employee Welfare Benefit Plan (the "Plan"). The Plan is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001(1) & 1003(a). TNE is the third-party administrator *1240 for the Plan and is authorized to seek reimbursement from third-parties who may be liable for a participant's injuries. After plaintiff's injury, the Plan paid medical benefits totaling over $350,000.00. When benefits under this Plan were exhausted, Medicaid furnished assistance to pay for plaintiff's care, and continues to do so.
Morrone sued Ronald F. Thuring ("Thuring") claiming that he was ultimately responsible for his injuries. Ultimely, Morrone settled his case with Thuring for Thuring's policy limits of $50,000. Thuring was permitted to deposit the $50,000.00 into an interest bearing account pending the outcome of this motion.
Several parties are now seeking to enforce liens on the settlement amount. Plaintiff's ex-wife, Debra Segreto seeks to enforce judgments filed in the Superior Court of New Jersey reflecting $45,105.45 in child support arrearages to her and Bergen County Social Services. Patricia Morrone, plaintiff's current spouse, seeks additional child support arrearages of $20,333.75. TNE (or the "Plan") has filed a subrogation claim for health benefits of over $350,000.00 based on the language contained in the ERISA plan.[1] The State of New Jersey also asserts a Medicaid lien for over $400,000 expended on the plaintiff's care. That figure continues to increase. Plaintiff's attorney, too, seeks his fees and costs expended in creating the $50,000 fund in court. Finally, plaintiff Patricia Morrone, asserts a per quod claim to which she claims entitlement.
II. THE PER QUOD CLAIM
In Hedgebeth v. Medford, 74 N.J. 360, 378 A.2d 226 (1977), the New Jersey Supreme Court considered the priority of a per quod claim when New Jersey sought to enforce a Medicaid lien against a plaintiff's recovery. The Court gave priority to the Medicaid claim and observed that a per quod claim can never rise higher than the direct claim arising from the accident. The Court reasoned that since both awards, that of the injured person and his spouse, would logically be used to pay the injured party's bills, "there [is] a substantial unity between the two awards." Id. at 374, 378 A.2d 226. While Patricia Morrone no doubt has been injured as a result of her husband's accident, the derivative claim cannot rise higher than the direct claim. That direct claim is subordinate to the TNE and Medicaid claims which total over $750,000.00. Obviously, the $50,000.00 in available funds will not satisfy even a small amount of either claim. Accordingly, Patricia Marrone's claim against this fund in court must fail.
III. CHILD SUPPORT PAYMENTS
Plaintiff's ex-wife, Debra Segreto ("Segreto"), currently holds seven (7) separate judgments of record against her former husband docketed between June 19, 1991 and April 21, 1992. Each of these judgments were docketed years before Morrone's accident. As of March 31, 2000, these judgments totaled $18,207.74. Segreto argues that because she is a prior judgment creditor, her lien is superior to those which are subsequent in time.
N.J.S.A. 2A:17-56.37 (a) states that:
Upon resolution of any civil action where a party is entitled to receive a monetary award or settlement, the court shall:
* * * * *
(2) Order that disbursement of any monies due to that person not be made for 30 days after the submission of a certification. As used in this act, "monies due to that person" do not include monies *1241 for attorney fees, witness fees, court costs, fees for health care providers, payment of liens which may be subject to the award, including but not limited to, taxes, physician and mechanics' liens and related items, which shall be disbursed immediately. (Emphasis added.)
Segreto claims that the statute does not render her lien inferior to the TNE or Medicaid liens because it does not, by its terms, apply to debts already reduced to judgment. However, the statute's language does not distinguish between debts which are reduced to judgment and those which are not. N.J.S.A. 2A:17-56:37 refers to "a party entitled to receive a monetary award." Clearly, that language is broad enough to encompass both debts and judgments.
Segreto also argues that the statute governing wage executions and garnishments, indicates our Legislature's intent to give judgments for child support automatic priority. N.J.S.A. 2A:17-56.10 addresses priorities of income withholding and wage garnishments as they relate to child support:
If the court enters an order modifying alimony, maintenance or child support, the Probation Division shall amend the income withholding amount accordingly. This income withholding shall have priority over any other withholding and garnishments without regard to the dates that the other income withholding or garnishments were issued.

N.J.S.A. 2A:17-56.10(b)(Emphasis added). It is understandable that the Legislature might intend to give support judgments priority in garnishment situations which seek to levy ongoing wage payments while declining to prefer such payments to any type of lien. Considering both statutes, the Court believes that monies due in child support are first liens only in limited situations. These situations involve the current income being made by the wage earner and by definition are for the ongoing support of the family. First priority is given to the lien which is derived from funds of a similar nature. The Court finds that when N.J.S.A. 2A:17-56.37(a) and N.J.S.A. 2A:17-56.10(b) are read together, the Legislature's intent was to permit liens for health care providers to take precedence over child support payments when funds are recovered on account of a personal injury. That is the circumstance here.
IV. ERISA AND ATTORNEY FEES FOR CREATING A FUND IN COURT
ERISA was enacted to provide some security for employee retirement benefits but protects only those benefits which are provided in an approved plan. Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 78 (3d Cir.1991), cert. denied, 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992). ERISA does not require a plan have any particular substantive content. Accordingly, courts should not insert substantive content in such plans. Id. at 78. Moreover, "courts have no right to torture language in an attempt to force particular results ... the contracting party never intended or imagined. To the exact contrary, straightforward language ... should be given its natural meaning." Ryan v. Federal Express Corp., 78 F.3d 123, 126 (3d. Cir.1996), quoting Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir.1989).
The Plan here contains a reimbursement provision which allows TNE to recover any monies that an insured may receive from a third party alleged to be responsible for an injury. TNE asserts that, as holder of a "first-lien", it has priority over potential lienholders to recover the full settlement amount. The Plan states:
A third party may be liable or legally responsible for expenses incurred by a Covered Person for an Illness, sickness, or a bodily injury.
Benefits may also be payable under Plan for such expenses. When this happens, the Company may, at its option:
*1242 (1) take over the Covered Person's right to receive payment from the third party, the third party's insurer or guarantor, or uninsured and/or underinsured motorist insurance.
The Covered Person or his or her legal representative will:
(A) transfer to the Company any right he or she may have to take legal action arising from the Illness, sickness or bodily injury to recover any sums paid under this Booklet on behalf of the Covered Person; and
(B) cooperate fully with the Company in asserting its right to subrogate. This means the Covered Person or his or her legal representative must supply the Company with all information and sign and return all documents reasonably necessary to carry out the Company's right to recover any sums paid under the Booklet which are subject to this provision.
(2) recover from the Covered Person or his legal representative any benefits paid under the Booklet from payment which the Covered Person is entitled to receive from the third party, the third party's insurer or guarantor, or uninsured and/or underinsured motorist insurance.
The Company will have a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the Covered Person receives from any other sources listed above....
* * * * *
(3) the Company's first lien rights will not be reduced due to the Covered Person's own negligence or due to attorney's fees and costs. (Emphasis in original.)
Based on this language, TNE asserts that it is entitled to payment of the full $50,000.00, without any deductions for plaintiff's other debts and/or liens. TNE relies on several federal cases to support its contention that a court may not reduce its recovery.
In Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir.1996), participants argued that the plan should pay a pro rata share of the attorney's fees incurred in obtaining a third-party settlement. There, the plaintiffs received over $190,000.00 in benefits from their ERISA plan after their daughter was born with cerebral palsy and severe brain damage. Plaintiffs commenced a lawsuit against the physician for malpractice and ultimately recovered $1,486,357.67. Plaintiffs' attorney received $273,635.77 in counsel fees. After the settlement was finalized, the ERISA plan asserted a subrogation lien for $190,000.00, the full amount of the benefits it paid. Plaintiffs, resisted the claim, insisting that they be permitted to subtract a pro rata share of counsel fees incurred in pursuing the malpractice claims.
Unlike the situation here, the Ryans' attorney had received full compensation for his services prior to the assertion of the claim. Because the settlement amount far exceeded the subrogation lien, there was no concern that the attorney who produced the settlement would not be compensated. Instead, plaintiffs contended in Ryan that the ERISA plan would be unjustly enriched if it was permitted a 100% reimbursement. The court, however, rejected that argument, finding that "it would be inequitable to permit the Ryans to partake of the benefits of the plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain." Id. at 128.
This case, however, is different. Here, unlike Ryan, plaintiffs are not asking TNE to deduct that portion ordinarily paid in attorney's fees and give it to them. Rather, plaintiffs' counsel seeks fair compensation for the time and effort expended in creating the fund in court.
*1243 In Walker v. Rose, 22 F.Supp.2d 343 (D.N.J.1998), defendant's nine year old son was injured by an explosion and fire which occurred when an aerosol can was thrown into a picnic fire. Because of the son's severe injuries, the defendant's ERISA plan expended over $1.2 million on his medical care. Defendant subsequently sued a third party alleged to be responsible for the injuries. The litigants were in the process of negotiating a $600,000.00 settlement when plaintiff, the administrator of the ERISA plan brought a declaratory judgment action seeking turnover of the full settlement amount.
The terms of the ERISA plan there, are substantially similar to the terms in issue here. The Walker court held that the reimbursement provision was unambiguous and clearly provided that the Plan had a first lien right "upon any recovery defendants receive from a third party." Id. at 351. However, although the court held that the Plan was entitled to receive monies recovered by the beneficiaries, it did not address the issue of attorney fees.
Counsel for plaintiffs here has successfully created a fund in court. Because of counsel's efforts, the full amount of the policy was recovered. Now, plaintiff's attorney seeks to recover his fee and expenses.
TNE essentially argues that if the amount received in settlement is less than the amounts paid in benefits, the Plan can demand the entire recovery. In such a situation, the attorney would be left to bear the cost of the suit, including his fees, even though the entire benefit of the settlement would go to the ERISA plan. The terms of the Plan here clearly give TNE the option of pursuing legal action against a third party on behalf of the insured. Here, however, the Plan chose not to exercise that option. Had the Plan elected to proceed directly against the defendant here, it may well have recovered, but would have been required to pay the fees and expenses incurred in that litigation.
Although governed by federal statute, courts have the power under appropriate circumstances to apply common-law doctrines in ERISA actions. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir.1996). Both common law and New Jersey statutory law indicate that the charging lien of an attorney for his or her fees on a judgment recovered through his or her efforts, has priority over the competing liens of a client's creditors.
After the filing of a complaint ... the attorney or counselor at law, who shall appear in the cause for the party instituting the action ... shall have a lien for compensation, upon his client's action... which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come.
N.J.S.A. 2A:13-5. An attorney has a special or charging lien for services in procuring a judgment, decree, or award for his client, and is considered an equitable assignee of the award to the extent of his debt. In re Archdeacon's Estate, 134 N.J. Eq. 535, 37 A.2d 34 (Prerog.Ct.1944).
Equitable considerations are commonly employed by courts to uphold the priority of attorneys' liens over the liens of competing creditors, even though a contrary conclusion could have been reached if other factors were used to determine priority. See LMWT Realty Corp. v. Davis Agency, 205 A.D.2d 479, 614 N.Y.S.2d 16 (N.Y.App. Div.1994); See also Eleazer v. Hardaway Concrete Co., 281 S.C. 344, 315 S.E.2d 174 (S.C.App.1984).
Hedgebeth v. Medford, 74 N.J. at 369, 378 A.2d 226 presented a similar question of whether an attorney's lien for creating a fund in court would take priority over a Medicaid lien. The New Jersey Supreme Court answered the question in the affirmative *1244 stating that a carrier "should not be entitled to enjoy the fruits of the assured's judgment against a tortfeasor without contributing in any way to the costs or burdens of litigating that claim." Id. at 369, 378 A.2d 226.
The Supreme Court's ruling in the Medicaid arena is in keeping with New Jersey judicial precedent where similar situations have occurred. In Brunetti v. Grandi, 89 N.J. Eq. 116, 104 A. 139 (N.J.Ch.1918), for example, the court permitted recovery in favor of the attorney representing a contractor in an action to collect the balance due for work performed. The attorney's claim of priority was then challenged by a subcontractor who had served prior notices under the mechanic's lien statute for money owed to them by the contractor. The court held that because the subcontractor knew of the suit by the contractor and brought no action of its own against the property owner, it had acquiesced in the contractor's prosecution of the suit. Since the fund in court represented the proceeds of that suit and was due to the efforts of the attorney, the amount due to the attorney constituted a lien on the cause of action and was entitled to be satisfied first. Id. at 120-21, 104 A. 139.
Likewise, the court in Adco Service, Inc. v. Graphic Color Plate, 137 N.J.Super. 39, 347 A.2d 549 (Law Div.1975) permitted an attorney to recover for his services prior to the federal government's enforcement of a preceding tax lien. Although the attorney's recovery there was in part based on federal tax law,[2] this Court finds the reasoning employed there to be persuasive. "It is believed that attorneys whose efforts result in obtaining or collecting judgments or settlements should be protected as to their reasonable fees to the extent that the fees are protected under local law." Id. at 48, 347 A.2d 549, quoting S. Rep. No. 1708 at 3 (1966), reprinted in 1966 U.S.C.C.A.N. 3722, 3727. The attorney here should be preferred "upon equitable grounds because [he] created the fund to which the lien attached." Adco Service, 137 N.J.Super. at 43, 347 A.2d 549.
TNE argues that preventing the plaintiffs' attorney from receiving fees and expenses is not contrary to equity principles. TNE claims that if ERISA plans are not allowed to obtain full reimbursement, especially in situations such as this where the fund in court is significantly less than their expenditures, they may cease covering injuries alleged to be caused by third parties. This argument is not logically persuasive and, of course, no empirical evidence is cited as a basis for TNE's surmise.
If ERISA plans, such as the one here, are permitted to ignore the fair claims of attorneys generating funds in court, they run the substantial risk that no attorney will pursue them. ERISA plan participants would instead, accept the benefits provided. There would be no incentive to attempt to recover any additional funds from potential responsible parties. By permitting the attorney to recover the fees and expenses incurred in litigation, the Plan promotes recovery from the responsible third party, thereby better allocating resources and, in turn, substantially promoting its own recovery. If the Plan wished to pursue the claim itself, it had the authority under the Plan document to do so and should have.
Finally, TNE claims the Plan's language that "the Company's first lien rights will not be reduced due to the Covered Person's own negligence or due to attorney's fees and costs" requires that attorney's fees and expenses be ignored. However, the reading of this clause does not preclude recovery by the attorney in this case. A lien is not synonymous with recovery. A lien is defined as a "claim, encumbrance, or charge on property for payment of *1245 some debt, obligation or duty." BLACK'S LAW DICTIONARY 922 (6th ed.1990). Permitting a portion of the recovery to be received by the attorney producing the benefit in no way reduces the Plan's first lien rights. The Plan continues to have a claim or encumbrance on the full recovery minus the costs.
V. MEDICAID
The State of New Jersey seeks reimbursement for benefits it paid on plaintiff's behalf after all other medical benefits were exhausted. Pursuant to N.J.S.A. 30:4D-1 to 30:4D-42, the State of New Jersey participates in the Medicaid Assistance Program ("Medicaid") established by Title XIX of the Social Security Act, 42 U.S.C. § 1396. Medicaid's purpose is to "furnish medical assistance on behalf of families with dependant children and of aged, blind, or disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396.
The Medicaid scheme obligates states to seek recovery of money paid out in the event third party liability is established. 42 U.S.C. § 1396a(a)(25). The statute provides:
(B) that in any case where such legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability.
Accordingly, N.J.S.A. 30:4D-7k authorizes the Commissioner of the Department of Human Services to:
take all reasonable measures to ascertain the legal or equitable liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability; ... and in any case where such liability is found to exist after medical assistance has been made available on behalf of the individual, to seek reimbursement for such assistance to the extent of such liability.
Here, the amount that Medicaid has disbursed clearly exceeds the settlement amount. Therefore, the State is obligated to seek such reimbursement. The New Jersey Supreme Court has held that the New Jersey Medicaid Law evinces an "unmistakable intent to afford the State every opportunity to recoup its payments from third parties." Hedgebeth v. Medford, 74 N.J. 360, 366, 378 A.2d 226 (1977); see also Lusby v. Hitchner, 273 N.J.Super. 578, 642 A.2d 1055 (App.Div.1994), (State's Medicaid agency has a right to reimbursement in cases where third party liability is established.)
However, although the statute requires the State to attempt to obtain the funds, it does not confer an automatic right of first recovery. In Hedgebeth v. Medford, 74 N.J. 360, 378 A.2d 226 (1977), the Supreme Court held that when the State exercises its right of subrogation under the Medicaid program, equitable principles govern, and in seeking reimbursement, the State must pay its pro rata share of the recipient's counsel fees. Id. at 369, 378 A.2d 226, citing Breslin v. Liberty Mut. Ins. Co., 69 N.J. 435, 439, 354 A.2d 635 (1976).
Similarly, equity dictates that a prior payor has a superior lien to Medicaid. By requiring all other payors to exhaust benefits prior to Medicaid payment, the State has limited its own risk. If coverage had not been exhausted under the Plan, Medicaid would not have been required to expend any funds for plaintiff's care.
Equitable considerations aside, this Court must also consider whether ERISA preempts New Jersey law governing the reimbursement of funds to the State's Medicaid program. ERISA contains a sweeping preemption provision that is intended to maintain uniformity in the enforcement of employee benefit plans.
*1246 Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states that "Except as provided in subsection (b) of this section," ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...." In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the United States Supreme Court stated that a law "relates to" an employee benefit plan if it "has a connection with or reference to such a plan." Id. at 96-97, 103 S.Ct. 2890.
Section 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A), otherwise known as the "saving clause" or "savings clause" qualifies the statute's broad preemption. "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to except or relieve any person from any law of any State which regulates insurance, banking, or securities." The savings clause is further qualified by Section 514(b)(2)(B) of ERISA, 29 U.S.C. § 1144(b)(2)(B), the "deemer clause," which states that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."
Finally, Section 514(b)(8) of ERISA, 29 U.S.C. § 1144(b)(8) also is applicable to this matter.
Subsection (a) of this section shall not be construed to preclude any State cause of action
(A) with respect to which the State exercises its acquired rights under section 1169(b)(3) of this title with respect to a group health plan (as defined in section 1167(1) of this title), or
(B) for recoupment of payment with respect to items or services pursuant to a State plan for medical assistance approved under title XIX of the Social Securities Act [42 U.S.C. § 1396 et seq.] which would not have been payable if such acquired rights had been executed before payment with respect to such items or services by the group health plan.
29 U.S.C. § 1144(b)(8)(B)(effective August 10, 1993).[3]
In Belshe v. Laborers Health and Welfare Trust Fund for Northern Cal., 876 F.Supp. 216 (N.D.Cal.1994), a federal district court held that a state statute governing reimbursement to the state Medicaid program by an ERISA governed benefit plan was preempted by ERISA. The court found that Section 514(b)(8) of ERISA, 29 U.S.C. § 1144(b)(8), "related to" the employee benefit plan, and did not fall within any of the exceptions to preemption. Section 514(b)(8) of ERISA, 29 U.S.C. § 1144(b)(8), indicates that
state laws relating to Medicaid reimbursement are precluded from preemption *1247 only to the extent that the state Medicaid program is exercising (as an assignee or subrogee) the rights of the beneficiary of the benefit plan..... The Medicaid statute providing for assignment of rights requires the person receiving Medicaid to "assign any rights... to support ... and to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). Thus, while [the Medicaid statute] allow[s] the state to acquire the rights of beneficiaries of third party plans, [it does not] allow the state to acquire greater rights than the beneficiaries have.
Belshe, 876 F.Supp. at 221. (Emphasis added). See also Commonwealth, Department of Public Welfare v. Lubrizol Corp., 737 A.2d 862, 868-869 (Pa. Commw.Ct.1999).
Here, TNE was the first to pay benefits on Morrone's behalf and, thus, the reimbursement provision contained in the policy was triggered once payments were made. Medicaid's rights to recoup payment did not arise until after TNE exhausted its benefits. Because Morrone had already relinquished his rights to TNE, there were no additional rights that Medicaid could acquire until TNE's claim was satisfied. Therefore, since TNE has any rights to recovery the plaintiffs' might have had, the exclusion set forth in Section 514(b)(8) of ERISA, 29 U.S.C. § 1144(b)(8) is not applicable and Medicaid's right of first recovery is preempted.
VI. CONCLUSION
Clearly, each party seeking payment has a valid cause of action. However, the funds recovered in the settlement are limited and it is impossible to satisfy all the liens held by the parties. Therefore, principles of equity dictate that plaintiff's attorney, by the fact that he created the fund, is permitted to recover his reasonable attorney fees before any other liens are satisfied. Secondly, TNE, in accordance with its first lien rights protected under federal law is entitled to recover the remainder of the fund in Court in partial satisfaction of the $350,000.00 which it expended on Morrone's behalf. Had the settlement been large enough to allow all of the parties to enforce their individual liens, the lien held by Medicaid would be the next to be satisfied. Although Medicaid has a valid lien, it is secondary to any lien held by the ERISA Plan. Debra Segreto's and Patricia Morrone's child support liens would follow, and only then would Patricia Morrone be entitled to receive payment on her per quod claim.
NOTES
[1] After plaintiffs filed a Motion to Adjust Priority of Liens, TNE filed a motion to have the matter removed to the Federal Court for the District of New Jersey, claiming preemption under ERISA. The District Court remanded the case to state court sua sponte before the plaintiffs' thirty day deadline to file the motion under 28 U.S.C. § 1447 expired because the court did not find ERISA preemption. In re The New England Employee Benefits Group, No. 99-cv-00627 (D.N.J.1999).
[2] 26 U.S.C. § 6323 gives super-priority to an attorney who has a special or charging lien under N.J.S.A. 2A:13-5.
[3] The original version of Section 514(b)(8) of ERISA (effective October 1, 1986), Pub.L. No. 103-66, Title IV, § 4301(c)(4), provided:

Subsection (a) of this section shall apply to any State law mandating that an employee benefit plan not include any provision which has the effect of limiting or excluding coverage or payment for any health care for an individual who would otherwise be covered or entitled to benefits or services under the terms of the employee benefit plan, because that individual is provided, or is eligible for, benefits or services pursuant to a plan under title XIX of the Social Security Act [42 U.S.C. § 1396 et seq.], to the extent such law is necessary for the State to be eligible to receive reimbursement under title XIX of that Act.
The only federal case interpreting this version of the statute was Wisconsin Dep't of Health and Social Servs. v. Upholsterers Int'l Union Health and Welfare Fund, 686 F.Supp. 708 (W.D.Wis.1988). There, the court held that a state law which provided that insurance policy benefits were primary to benefits provided by Medicaid, was not preempted by ERISA. However, the ERISA plan's coordination of benefits provision which made the plan a secondary payor to medicaid was valid because Section 514(b)(8) of ERISA was found to not yet be effective for the period which the State sought reimbursement.