Marie **WALKER** et al., Plaintiffs,

v.

Justin **ROSE** et al., Defendants.

Civ. No. 97–5702(GEB).

United States District Court,
D. New Jersey.

Sept. 10, 1998.

---

Joseph J. Fell, Danzig, Garubo & Kaye, LLP, Florham Park, NJ, for Marie Walker, Health and Welfare Plan for Employees and Dependents of Dick Greenfield Dodge, Inc., New England Employee Benefits Group and Great West Life & Annuity Ins. Co.

Eric Joseph Ludwig, Stark & Stark, Princeton Pike Corp. Center, Princeton, NJ, for Justin Rose, Kevin Rose and Lisa Rose.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on defendants' motion to dismiss plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(6) and plaintiffs' cross-motion for summary judgment pursuant to FED. R. CIV. P. 56. For the reasons set forth in this Memorandum Opinion, the Court will deny defendants' motion to dismiss and grant plaintiffs' cross-motion for summary judgment.

## I. BACKGROUND

Defendant Justin R. Rose is a dependent participant in the Health and Welfare Plan for Employees and Dependents of Dick Greenfield Dodge, Inc. (hereinafter "the Plan"). On or about September 2, 1996, Justin, a nine-year old, was injured by an explosion and fire which occurred when an aerosol can was thrown into a picnic bonfire. As a result of the explosion, Justin suffered second and third degree burns covering 77% of his body. On August 20, 1997, Justin and his parents (the defendants in this case) filed an action in the Superior Court of New Jersey, Law Division, Mercer County, against the third parties alleged to be responsible for Justin's injuries. The state court action names as defendants Gregory and Nancy Apai, and Dale Mertz. In connection with the injuries Justin suffered in the accident, the Plan has paid over $1.2 million on his behalf. *See* Affidavit of Marci Ryan ¶ 2.

Plaintiffs filed a complaint in this Court on November 12, 1997, and an amended complaint on December 8, 1997, seeking injunctive relief under ERISA to prevent defendants from violating the terms of the Plan, to redress past violations of the Plan, and to enforce the terms of the Plan. The amended complaint also seeks declaratory relief under the Declaratory Judgment Act. Plaintiffs essentially contend that defendants are in the process of finalizing a settlement in the state court action with the alleged responsible third parties for $600,000, but that defendants have indicated that they will not turn over the full settlement amount to the plaintiffs as required by the Plan's terms. In fact, to date, defendants have only been willing to reimburse the Plan $50,000, despite the fact that the terms of the Plan provide for full reimbursement.

## II. DISCUSSION

### A. ABSTENTION

Defendants argue that this Court should abstain from exercising jurisdiction

over this action because of "a pending state court action which will address the availability, disbursement and allocation of any settlement funds which may resolve the claim of Justin Rose, the minor child." *See* Defendants' Brief in Support of Motion to Dismiss at 4. Specifically, defendants contend that this Court should not entertain plaintiffs' declaratory judgment action since plaintiffs seek to circumvent the procedural and substantive requirements of New Jersey law with regard to the settlement of claims of minors. Defendants maintain that the state court action was filed in August 1997, and although not named as defendants, plaintiffs have been notified of all proceedings in that action. Defendants further claim that plaintiffs have not attempted to intervene in the state court action, nor have they brought a companion or consolidated claim to address their potential rights.

Plaintiffs' amended complaint seeks injunctive relief under ERISA, pursuant to 29 U.S.C. § 1132(a)(3), to prevent defendants from violating the terms of the Plan, to redress past violations of the Plan, and to enforce the terms of the Plan. *See* Amended Complaint, Count One ¶¶ 6, 14. The amended complaint also seeks declaratory relief under the Declaratory Judgment Act, pursuant to 28 U.S.C. §§ 2201 & 2202. *See* Amended Complaint, Count Two. ERISA specifically provides that a federal district court has exclusive jurisdiction over civil actions brought under 29 U.S.C. § 1132(a)(3) by the Secretary, participant, beneficiary or fiduciary of an ERISA plan to enforce the terms of the plan. *See* 29 U.S.C. § 1132(e). Thus, as this Court has exclusive jurisdiction over plaintiffs' claim for injunctive relief under ERISA, abstention is clearly inappropriate. *See, e.g., Retirement Fund Trust of the Plumbing v. Franchise Tax Bd.*, 909 F.2d 1266, 1274 (9th Cir.1990) ("The actions before us were brought by the trusts as federal law claims under ERISA. . . . ERISA grants federal courts exclusive jurisdiction over such claims. The trusts could not have initiated an action in state court in their fiduciary capacity. Abstention is inappropriate under these circumstances."); *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983) (declining to abstain from exercising

jurisdiction over a claim brought under 29 U.S.C. § 1132(a)(3) since the court had exclusive jurisdiction over such a claim pursuant to 29 U.S.C. § 1132(e)); *Schutte v. Maleski*, 1993 WL 183845 *7 (E.D.Pa.1993) (holding that the court could not abstain from considering plaintiff's ERISA claims brought pursuant to 29 U.S.C. § 1132(a)(3), since the court had exclusive federal jurisdiction); *Northwest Airlines, Inc. v. Gomez–Bethke*, 1984 WL 1040 *5 (D.Minn.1984) ("abstention is clearly inappropriate when, as previously noted, this court has exclusive jurisdiction over Northwest's ERISA claims pursuant to 29 U.S.C. § 1132(e)(1).").

■ With regard to plaintiffs' request for declaratory relief, this Court will not exercise its discretion to abstain. The decision of whether to abstain from exercising jurisdiction over a declaratory judgment action pending the resolution of state court proceedings is discretionary and is not limited to cases involving exceptional circumstances. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (reaffirming the holding in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), that a discretionary standard applies to abstention decisions in declaratory judgment actions); *see also NYLife Distributors, Inc. v. Adherence Group, Inc.*, 72 F.3d 371, 378 (3d Cir.1995), *cert. denied*, 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996). This discretion is not unbounded, and the Third Circuit has indicated that in exercising this discretion, district courts should lean toward allowing declaratory judgment actions to proceed. *See United States v. Commonwealth of Pa.*, 923 F.2d 1071, 1073 (3d Cir.1991).

In *Brillhart*, the Supreme Court stated that district courts have the discretion to dismiss a declaratory judgment action when "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *See Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173. "The Court did not articulate all of the considerations which should guide a district court's decision

in this regard; it did provide, however, that the court 'should ascertain whether the questions in controversy between the parties to the federal suit[ ] . . . can be better settled in the proceeding pending in state court[ ]', assess 'the scope of the pending state proceeding and the nature of the defenses open there[ ]', and evaluate 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding, etc.' " *See NYLife,* 72 F.3d at 376–77 (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173).

■ In the matter at hand, abstention is clearly inappropriate for several reasons. First, the pending state court action does not involve the same issues or parties. The state court action alleges claims for personal injury, while this action seeks injunctive relief under ERISA and the declaratory judgment act to compel defendants to comply with the Plan. Moreover, the defendants in the state court action are not parties to this action, nor is the Plan or Plan Administrator a party to the state court action. Second, since this Court has exclusive jurisdiction over the Plan's ERISA claims, the Plan's interests cannot be satisfactorily adjudicated in the state court proceedings. Thus, in its discretion, this Court will not abstain from exercising jurisdiction.

## B. Defendants' Motion To Dismiss And Plaintiffs' Cross-motion For Summary Judgment

■ A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief. *Bartholomew v. Fischl,* 782 F.2d 1148, 1152 (3d Cir.1986); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). The Court may not dismiss a complaint unless plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Angelastro,* 764 F.2d at 944. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In setting forth a valid claim, a party is required only to plead "a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a).

Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In a summary judgment motion, the non-moving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-moving party bears the burden of proof at trial as to a dispositive issue, Rule 56(e) requires him to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990). Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"While ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan. . . . ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans." *See Hamilton v. Air Jamaica, Ltd.,* 945 F.2d 74, 78 (3d Cir.1991), *cert. denied,* 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992). Moreover, "notwithstanding 'the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results . . . the contracting parties never intended or imagined. To the exact contrary, straightforward language . . . should be given its natural meaning.' " *See Ryan v. Federal Express*

*Corp.*, 78 F.3d 123, 126 (3d Cir.1996) (quoting *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir.1989)).

The Plan at issue contains a reimbursement provision which allows the Plan to recoup monies paid by it which should have been paid by the third-party responsible for the injuries. The Plan provides, in pertinent part, that if it pays benefits, it may:

(1) take over the Covered Person's right to receive payment from the third party, the third party's insurer or guarantor, or uninsured and/or underinsured motorist insurance.

The Covered Person or his or her legal representative will:

(A) transfer to the Company any rights he or she may have to take legal action arising from the Illness, sickness or bodily injury to recover any sums paid under this Booklet on behalf of the Covered Person; and

(B) cooperate fully with the Company in asserting its right to subrogate. This means the Covered Person or his or her legal representative must supply the Company with all information and sign and return all documents reasonably necessary to carry out the Company's right to recover any sums paid under the Booklet which are subject to this provision.

(2) recover from the Covered Person or his or her legal representative any benefits paid under the Booklet from payment which the Covered Person is entitled to receive from the third party, the third party's insurer or guarantor, or uninsured and/or underinsured motorist insurance.

The Company will have a first lien upon any recovery, whether by settlement, judgment, mediation or arbitration, that the Covered Person receives from any of the sources listed above. This lien will not exceed:

(A) the amount of benefits paid by the Company for the Illness, sickness or bodily injury; or

(B) the amount received from the third party, the third party's insurer or guar-antor, or uninsured and/or underinsured motorist insurance.

The Covered Person or his or her legal representative must cooperate fully with the Company in asserting its recovery rights. The Covered Person or his or legal representative will, upon request from the Company, provide all information and sign and return all documents necessary to exercise the Company's recovery rights under this provision.

*See* Declaration of Marie Walker Exh. A (hereinafter "Walker Dec.").

■ Plaintiffs' bring this suit, pursuant to ERISA, to enforce the subrogation/reimbursement provision of the Plan. Under 29 U.S.C. § 1132(a)(3), a civil action may be brought

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*See* 29 U.S.C. § 1132(a)(3). Defendants first argue that plaintiffs have failed to present any evidence to show that the Plan is a self-funded, ERISA-governed plan. *See* Defendants' Brief in Further Support of their Motion to Dismiss at 7–8. However, plaintiffs' have provided the Declaration of Marie Walker, the Plan Administrator, which attests that the Plan was established and maintained by Greenfield Dodge for the purpose of providing its participants and their dependants, with, *inter alia*, medical, surgical and hospital care. Walker further attests that the class of beneficiaries are Greenfield Dodge employees and their dependants, that benefits are financed by Greenfield Dodge, and that Greenfield Dodge has also engaged New England Mutual Life Insurance Company to act as a non-discretionary claims service administrator for the Plan. *See* Declaration of Marie Walker ¶¶ 2–3 (hereinafter "Walker Dec."). Moreover, defendants' counsel has admitted in correspondence in the state court action that the Plan is an ERISA-governed plan. *See* Certification of Joseph J. Fell Exh. 1 (November 5, 1997

Letter from Defendants' Counsel to the Honorable Neil H. Shuster, J.S.C.) ("The settlement has been complicated by virtue of the fact that the New England Healthcare Plan, an ERISA approved, employee funded healthcare plan has asserted a lien and is seeking reimbursement for a portion of the more than $1 million they have paid on account of healthcare benefits in this case.").

▪ Defendants also argue that the Plan is exempt from ERISA pursuant to the safe harbor regulations established by the Department of Labor. The Department of Labor has promulgated a safe harbor provision excluding from ERISA those plans which: (1) no contribution is made by the employer; (2) participation in the program is completely voluntary; (3) the sole function of the employer is to permit the insurer to publicize the program to employees and to collect premiums through payroll deductions; and (4) the employer receives no consideration in connection with the program. *See* 29 C.F.R. § 2510.3–1(j). Plans which meet each of these four factors are excluded from ERISA coverage. *See, e.g., Morris v. Paul Revere Ins. Group,* 986 F.Supp. 872, 878 (D.N.J.1997). As the Plan at hand is self-funded by Greenfield Dodge, *see* Walker Dec. ¶ 3, the safe harbor provision is inapplicable. Furthermore, in opposing a motion for summary judgment, the non-moving party may not rely on mere allegations, but must designate specific facts showing that there is a genuine issue for trial. Defendants have failed to do so here with regard to the issue of whether the Plan is ERISA-governed. Thus, based upon the record presented, this Court finds that the Plan at issue is ERISA-governed.

▪ Defendants further contend that since plaintiffs seek monetary damages, which are not recoverable under § 1132(a)(3), plaintiffs fail to set forth a claim under § 1132(a)(3). In *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Supreme Court held that "appropriate equitable relief" in subsection B of § 1132(a)(3) does not include monetary damages, but rather refers to remedies traditionally viewed as equitable, such as an injunction or restitution. *See id.* at 256–63, 113 S.Ct. 2063. However, "*Mertens* does not necessarily bar all forms of monetary damages. The Eighth Circuit Court of Appeals has characterized some forms of monetary relief sought pursuant to ERISA § 502(a)(3) [29 U.S.C. § 1132(a)(3) ] as restitution, so that such relief avoids the bar to monetary damages erected by *Mertens.*" *See Hein v. F.D.I.C.,* 88 F.3d 210, 224 n. 11 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997) (citing *Howe v. Varity Corp.,* 36 F.3d 746, 756 (8th Cir.1994)). Recently, the Third Circuit again stated that "appropriate equitable relief" under § 1132(a)(3) may include restitution:

> "Appropriate equitable relief" generally is limited to traditional equitable relief such as restitution and injunctions rather than money damages. *Hein v. F.D.I.C.,* 88 F.3d 210, 223–24 (3d Cir.1996). However, ERISA § 502(a)(3) [29 U.S.C. § 1132(a)(3) ] does not "necessarily bar all forms of money damages." *Id.* at 224 n. 11. Here, though the district court seemed to treat [plaintiff] Ream's complaint as one seeking money damages, Ream sought only to recover his vested interest in the plan which largely reflected his own contributions. This relief, regardless of the language in the complaint, easily may be characterized as restitution and the Bank does not contend otherwise.

*See Ream v. Frey,* 107 F.3d 147, 152 n. 5 (3d Cir.1997); *see also In re Unisys Corp.,* 57 F.3d 1255, 1269 (3d Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996) (holding that "appropriate equitable relief" may include an injunction, specific performance, or restitutionary reimbursement).[1] As plaintiffs' amended complaint does not seek monetary damages, but instead seeks to enforce the Plan's subrogation/reimbursement provision, a remedy which is res-

---

1. Defendants rely upon the Ninth Circuit's decision in *FMC Medical Plan v. Owens,* 122 F.3d 1258 (9th Cir.1997), which holds that equitable reimbursement does not constitute "other appropriate equitable relief" under § 1132(a)(3). However, *FMC Medical Plan* directly conflicts with the Third Circuit's holdings in *In re Unisys, Hein* and *Ream.* Accordingly, this Court does not find the *FMC Medical Plan* case to be persuasive or controlling.

titutionary in nature, plaintiffs' action is properly brought pursuant to 29 U.S.C. § 1132(a)(3).[2]

■ Defendants moreover assert that the reimbursement provision at issue does not explicitly provide a right to first recovery when the Plan participant is not made whole, and therefore, plaintiffs' cross-motion for summary judgment must be denied. "Under the make whole doctrine, an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss." *See Cagle v. Bruner,* 112 F.3d 1510, 1520 (11th Cir.1997). The make whole rule is an equitable principle which, absent an agreement to the contrary, prohibits an insurer from enforcing a right to subrogation until the insured has been fully compensated for his injuries—i.e., made whole. *See Barnes v. Independent Automobile Dealers Assoc.,* 64 F.3d 1389, 1394 (9th Cir.1995). The make whole rule is, however,

> a rule of interpretation. No one doubts that the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his make-whole right. The right exists only when the parties are silent. It is a gap filler.

*See Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1297 (7th Cir.), *cert. denied,* 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993) ("Because . . . the make whole rule is just a principle of interpretation, it can be overridden by clear language in the plan."); *see Cagle,* 112 F.3d at 1521 ("Because the make whole doctrine is a default rule, the parties can contract out of the doctrine.").

Federal courts are in disagreement over whether the make whole rule should apply to ERISA cases. Several courts have applied the make whole rule where the plan does not clearly preclude it, *see, e.g., Cagle,* 112 F.3d at 1520, while other courts have declined to apply the make whole rule under any circumstances. *See, e.g., Sunbeam–Oster Co., Inc. v. Whitehurst,* 102 F.3d 1368 (5th Cir.1996). While the Third Circuit has yet to explicitly rule on the issue, in *Ryan v. Federal Express Corp.,* 78 F.3d 123 (3d Cir.1996), the Third Circuit stated:

> In deciding whether it is appropriate to apply principles of federal common law, "the inquiry is whether the judicial creation of a right . . . is 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Plucinski v. I.A.M. Nat'l*

---

2. Defendants also appear to argue that the instant action is not a reimbursement action by an ERISA plan, but rather one to recover monies for a third-party insurer as a result of an insurance contract between the Plan and the third-party insurer. Defendants thus contend that ERISA is inapplicable. However, the mere fact that a Plan maintains stop-loss insurance or engages a third party administrator in carrying out administrative functions does not mean the plan is not ERISA-governed. *See Drexelbrook Engineering Co. v. The Travelers Ins. Co.,* 710 F.Supp. 590, 596 (E.D.Pa.), *aff'd* 891 F.2d 280 (3d Cir.1989). Moreover, the uncontroverted evidence indicates that the Plan is the real party in interest. In opposing plaintiffs' cross-motion, defendants contend that summary judgment is not proper because plaintiffs have not produced the stop-loss policy or the service agreements. *See* Defendants' Brief in Further Support of Defendants' Motion to Dismiss at 8. In their reply brief, plaintiffs noted that defendants did not submit an affidavit pursuant to Fed. R. Civ. P. 56(f) explaining the need for additional discovery to oppose plaintiffs' cross-motion for summary judgment. Subsequent to the filing of plaintiffs' reply brief, defendants filed a Rule 56(f) certification attesting that additional discovery was required on

these issues. This certification, in effect, constitutes a sur-reply, which is not provided for in this Court's Local Civil Rules, nor did defendants' request permission from the Court to file a sur-reply. Moreover, defendants' Rule 56(f) certification has not been timely submitted as it was not filed with defendants' opposition papers, but was only submitted after the issue was raised by plaintiffs. *See, e.g., Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 92 (1st Cir.1996). Furthermore, even if considered timely, the certification submitted fails to comply with Rule 56(f)'s requirements. The Third Circuit has interpreted Rule 56(f) "as imposing a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *See Dowling v. City of Philadelphia,* 855 F.2d 136, 139–40 (3d Cir. 1988). Here, while defendants have listed the discovery they request, defendants have failed to indicate how if uncovered it would preclude summary judgment and why it was not previously obtained. Consequently, defendants' purported Rule 56(f) certification does not preclude the granting of summary judgment.

*Pension Fund,* 875 F.2d 1052, .1056 (3d Cir.1989) (citations omitted). We have admonished district courts that they "should not easily fashion additional ERISA claims and parties outside congressional intent under the guise of federal common law." *Curcio v. John Hancock Mut. Life. Ins. Co.,* 33 F.3d 226, 235 (3d Cir.1994). As the Supreme Court has explained, "[t]he authority of courts to develop a 'federal common law' under ERISA ... is not the authority to revise the text of the statute." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 258–60, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

*See id.* at 126. The court further noted that: While ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan .... ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans. Furthermore, notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results ... the contracting parties never intended or imagined. To the exact contrary, straightforward language ... should be given its natural meaning.

*See id.* (citations omitted).

 As with many other substantive terms of welfare plans, ERISA says nothing about subrogation/reimbursement provisions. "ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *See id.* at 127. The language of the reimbursement provision at issue is unambiguous. It clearly provides that plaintiffs have "a first lien upon any recovery" that defendants receive from a third-party. *See* Walker Dec. Exh. A. As a result of the injuries Justin suffered in the accident, the Plan has paid over $1.2 million on his behalf. When read in context and viewed in light of all of the circumstances, this language can only mean that the Plan is entitled to be reimbursed by defendants for amounts the defendants receive from a third-party. Thus, under the unambiguous terms of the Plan, plaintiffs are entitled a full first-lien reimbursement of the $600,000 settlement in the state court action. As the language of the Plan is clear, this Court will not apply a common law rule of interpretation which is contrary to the terms of the plan. *See Ryan,* 78 F.3d at 126. As the Fifth Circuit aptly noted:

we should not (and will not) penalize the Plan, or other similar ERISA plans for that matter, for lack of technical precision or verbosity by labeling the Plan "silent" or "ambiguous" when it uses the kind of direct, jargon-free language that is mandated by ERISA for all summary plan descriptions and does not expressly address every conceivable factual variation of recovery, depending on which combination of source and fraction is under consideration at the time. In other words, the fact that the SPD [summary plan description] for the Plan does not express a reimbursement priority for each possible combination or permutation—here, the beneficiary's partial recovery from the tortfeasor's insurer—is not a valid reason for branding the SPD as silent and subjecting it first to a search for the intent of the parties and then to a default rule of interpretation if their intent cannot be discerned.

. . . .

Far from the kind of silence that would be tantamount to ambiguity, the only silence here is the understandable absence of separate, specifically articulated rules for situations of partial recovery and total recovery with variations depending on the nature of the source of recovery. This signifies nothing more than that, regardless of source, the rule is the same for total and partial recoveries. Again, the absence of more particularized and technical legal language addressing the partial recovery situation cannot be grounds for supplanting the Plan Priority rule when recovery is partial, and thereby penalizing the Whitehursts' [the beneficiaries'] fellow employees.

*See Sunbeam-Oster,* 102 F.3d at 1375; *see also Waller v. Hormel Foods Corp.,* 120 F.3d 138 (8th Cir.1997) (declining to apply the

make whole rule to an ERISA plan's subrogation clause).

Defendants cite to *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir.1997), and *Barnes v. Independent Automobile Dealers Assoc.*, 64 F.3d 1389 (9th Cir.1995), in support of their argument that this Court should apply the make whole doctrine to the Plan. However, to the extent that *Cagle* and *Barnes* require that, in order to override the make whole doctrine, the plan must include language "specifically allowing the Plan the right of first reimbursement out of any recovery the participant was able to obtain even if the participant were not made whole," *see Cagle*, 112 F.3d at 1522 (citing *Barnes*, 64 F.3d at 1395), this Court does not find these decisions to be persuasive, especially in light of the Third Circuit's decision in *Ryan*. Moreover, both *Cagle* and *Barnes* are distinguishable since the plans in those cases had not yet reimbursed the parties for their expenses,[3] while here the Plan has already paid defendants over $1.2 million. In fact, the *Barnes* decision, upon which the *Cagle* court relied heavily, explicitly noted that while some courts have found that reference to "any" or "all" rights of recovery in a subrogation/reimbursement clause overrides the make whole rule, in those cases, as opposed to in *Barnes*, the insurance company had already paid out the insured's claim. *See Barnes*, 64 F.3d at 1396. Accordingly, this Court finds that the Plan's reimbursement language is unambiguous, and the provision's reference to "any recovery" overrides the make whole rule. Furthermore, even assuming that the Plan's language does not clearly preclude the application of the make whole rule, defendants have failed to present any evidence to the Court that they have not been "made whole." As such, defendants may not defeat plaintiffs' cross-motion for summary judgment by relying on mere allegations.

3. In *Cagle* the plan paid an initial claim of $296.00, but then refused to pay or process any additional claims.

4. Contrary to defendants' assertion, the fact that plaintiffs attempted to settle this dispute with defendants prior to filing suit does not in any

Defendants further contend that the plaintiffs have failed to establish that the Roses have acted in violation of the terms of the Plan. However, as previously noted, the Plan is entitled to reimbursement from defendants for any funds recovered from a third-party. The Plan also provides that "the covered person must cooperate fully with the plan in asserting its rights to recover." *See* Walker Dec. Exh. A. In the state court proceeding, defendants have admitted that "the homeowners insurance company who insured the families of the hosts and perpetrators [the state court defendants] have each agreed to pay $300,000 which equals the full liability coverage available for each policy." *See* Fell Cert. Exh 1 (November 5, 1997 Letter from Defendants' Counsel to the Honorable Neil H. Shuster, J.S.C.). The letter also requests that Judge Shuster preside over a friendly conference to a proposed settlement agreement among the parties. *See id.* Defendants, however, have indicated that they will not turn over the full settlement amount to the plaintiffs as required by the Plan's terms. In fact, to date, defendants have only been willing to reimburse the Plan $50,000, despite the fact that the Plan is entitled to the entire settlement amount of $600,000.[4] Thus, it is clear that defendants have violated the terms of the Plan. Accordingly, plaintiffs' cross-motion for summary judgment will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will deny defendants' motion to dismiss and grant plaintiffs' cross-motion for summary judgment.[5] An appropriate form of Order is filed forthwith.

### ORDER

For the reasons set forth in the Memorandum Opinion filed in the above-captioned matter on this date;

way impede plaintiffs' right to fully recover under the terms of the Plan.

5. Accordingly, plaintiffs' Motion for leave to filed a second amended complaint will be denied as moot. *See* Plaintiffs' Motion for Leave to File a Second Amended Complaint at 2–3.

IT IS on this 10th day of June, 1998;

ORDERED that defendants' motion to dismiss be and hereby is DENIED; and it is further

ORDERED that plaintiffs' cross-motion for summary judgment be and hereby is GRANTED; and it is further

ORDERED that plaintiffs' motion for leave to file a second amended complaint be and hereby is DENIED AS MOOT; and it is further

ORDERED that the Clerk of the Court CLOSE the above-captioned matter.