Cooper ADELSTEIN, by and through his parents and next friends Kevin and Daryn ADELSTEIN, on behalf of himself and all others similarly situated Kevin Adelstein, Daryn Adelstein, Plaintiffs,

v.

**UNICARE LIFE AND HEALTH INSURANCE COMPANY,**
**Defendant.**

**No. 6:99–CV–1544–Orl–28JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

March 20, 2001.

Gary D. Fox, Stewart, Tilghman, Fox & Bianchi, P.A., Miami, FL, John Edwin Fisher, Fisher, Rushmer, Werrenrath, Disckson, Talley & Dunlap, P.A., Orlando, FL, Philip D. Parrish, Russo Parrish Appellate Firm, Miami, FL, for Plaintiffs.

Roland Carl Goss, Stephan I. Voudris, Jorden Burt, LLP, Miami, FL, Waldemar J. Pflepsen, Stephen H. Goldberg, Jordan, Burt, Boros, Cicchetti, Berenson & Johnson, LLP, Washington, DC, for Defendant.

## ORDER

ANTOON, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Doc. 46) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 76).

The United States Magistrate Judge has submitted a Report and Recommendation (Doc. 97, filed February 7, 2001) recommending that Defendant's Motion (Doc. 46) be granted.[1] Plaintiffs have filed Objections (Doc. 104, filed February 26, 2001) to the Report and Recommendation, and Defendant has responded to those objections (Doc. 105, filed March 7, 2001).

After an independent review of the record in this matter, including the objections filed by Plaintiffs and the response filed by Defendant, and after a review of pertinent case law, the Court agrees with the findings and conclusions of law in the Report and Recommendation. Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 97, filed February 7, 2001) is **ADOPTED** and **CONFIRMED** and made part of this Order.

2. Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED** and the Court declares that Defendant is entitled to the $142,226.18 held in the trust account of Plaintiffs' counsel.

3. Plaintiffs' Motion for Partial Summary Judgment (Doc. 76) is **DENIED.**

4. All other pending motions are **DENIED** as moot.

5. The Clerk is directed to enter a judgment in favor of Defendant which provides that Defendant is entitled to the $142,226.18 held in the trust account of Plaintiffs' counsel. The Clerk is further directed to close the file.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs Kevin Adelstein and Daryn Adelstein, on behalf of their son, Cooper Adelstein [hereinafter collectively referred to as the "Adelsteins"], seek a declaratory judgment regarding the terms of their medical benefits' plan under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (ERISA). Specifically, the Adelsteins claim that because Cooper was not "made whole" by a settlement recovery, defendant Unicare Life & Health Insurance Company ("Unicare") has no right to subrogation or reimbursement under the plan.

On June 28, 2000, Unicare filed this motion for summary judgment claiming,

---

1. The Report and Recommendation does not address Plaintiffs' Motion (Doc. 76), as that motion was not referred to the Magistrate Judge for a report.

among other things, that Adelstein breached the terms of the health benefit plan and policy by failing to give Unicare adequate and timely notice of their claim against Florida Hospital and by settling that claim without notice to Unicare. Docket No. 46. Claiming that it was prejudiced by a breach, Unicare argues that it is entitled to subrogation and reimbursement as a matter of law. Docket No. 46.

On August 24, 2000, the Adelsteins filed a memorandum in opposition. Docket No. 58. Unicare then filed a reply memorandum in support of its motion for summary judgment [Docket No. 71], which was followed on November 8, 2000 by the Adelsteins' sur-reply in opposition [Docket No 72]. On November 15, 2000, the undersigned held a full hearing on Unicare's motion. On December 7, 2000, Unicare filed proposed findings of fact and law.[1] Docket No. 77. The Adelsteins responded to Unicare's proposed findings on December 12, 2000. Docket No. 80. For the reasons set forth below, Unicare's motion for summary judgment should be **GRANTED.**

## II. UNDISPUTED FACTS

### A. *Unicare's Health Care Coverage*

On January 1, 1997, Unicare Life & Health Insurance Company issued Group Policy Number GI 113318 ("the policy") to Fox/Liberty Networks, LLC ("Fox"), providing health benefits to employees of Fox. Docket No. 37, Ex. A. Laurie Cummings Aff. ¶ 3. Fox was the sponsor of an employee benefit plan covered by the Employment Retirement Income Security Act of 1974 ("ERISA") ("the plan"). Both the policy and the plan contain the Mowing provision:

**PROVISION FOR SUBROGATION/REIMBURSEMENT**

Where the insurer has provided benefits under this group policy a covered person for any illness, or injury, or other condition for which a third party may be liable or legally responsible by reason of negligence, intentional act or breach of any legal obligation on the part of such third party, the insurer will advance the benefits of this group policy to a covered person *subject to the following:*

The insurer will automatically have a lien, to the extent of benefits advanced upon the recovery whether by settlement, judgment or otherwise, that a covered person received from a third party, the third party's insurer or any other source as a result of the covered person's injuries. The lien is in the amount of benefits paid by the insurer under this group policy for the treatment of the illness, or the injury or condition for which the third party is liable.

**A covered person agrees to advise the insurer, in writing, within 60 says of a claim against the third party and to take such action, as the insurer may require to facilitate enforcement of the insurer's rights. A covered person also agrees to take no action to prejudice the insurer's rights or interest under this group policy. Failure of a covered person to give notice to the Insurer or to cooperate with Me insurer, or a covered person's actions that prejudice the insurer's rights or interest, will be a material breach of this group policy and result in the covered person being personally responsible for reimbursing the insurer.** Cumming's Aff. Ex. 1 (the policy) at 102; Docket No. 37, Cumming's Aff. Ex. 2 (the plan) at 102.

---

**1.** The factual findings proposed by Unicare were in some pertinent respects unreliable and, to that extent, they were rejected by the Court.

It is not contested that plaintiff, Kevin Adelstein, as an employee of Fox, was covered by the benefit plan sponsored by Fox. It also is not contested that Kevin Adelstein's son, Cooper Adelstein, is a beneficiary under and covered by the benefit plan. Complaint, ¶ 5.

## B. *Cooper Adelstein's Injuries and Treatment*

Cooper Adelstein was born at Florida Hospital. Due to an apparent cardiac arrest soon after birth, on December 24, 1996, Cooper suffered brain damage. The Adelsteins submitted multiple claims relating to Cooper's medical treatment, and Unicare undisputedly paid $142,226.18 under the plan and the policy. Complaint, ¶¶ 11, 14; Cummings Aff. ¶ 5. The medical services which were the subject of the claims paid by Unicare were rendered from late 1997 through September 1998. Cummings Aff. ¶ 5. The claims were for services rendered by multiple providers other than Florida Hospital long after Cooper had been discharged from Florida Hospital, and did not include any statement of the cause of Cooper's problems. Cummings Aff. ¶ 7

## C. *The Initial Contacts and Investigation of Responsibility*

Unicare retained Rawlings Company ("Rawlings") to handle subrogation/reimbursement claims on its behalf. Such claims arise in situations in which Unicare has paid medical claims for conditions caused by the negligence of third parties, and Unicare seeks recovery of the monies it has paid from such third parties, or from funds paid to its insureds by such third parties. In February 1998, Rawlings began to investigate whether there might be subrogation or reimbursement claims in connection with the amounts paid by Unicare for Cooper Adelstein's health care.

James McDermott, a subrogation representative at Rawlings, was assigned responsibility for the matter at Rawlings. Docket Nos. 38, James McDermott Aff. ¶¶ 2–4, 7.

On February 17, 1998 Rawlings sent a letter to Cooper Adelstein's family (on Unicare's letterhead) advising them of Unicare's right to subrogation and reimbursement of the payments it had made. McDermott Aff ¶ 8, Ex. A. The letter provides, in part:

> We need to obtain detailed information concerning any claim which may be related to an accident and therefore might be the responsibility of another organization, person, or insurer . . .

> Please complete the questionnaire on the back of this letter to assist us in reviewing claims for the patient listed above. This will help determine if Unicare Life & Health Insurance Company is entitled to be reimbursed by some other responsible party associated with or involved in an accident.

> We have asked The Rawlings Company to help us in this health care cost savings program. Please complete the form on the back of this letter. We have enclosed a postage paid envelope addressed to The Rawlings Company for your convenience.

> If you need any help to complete this form you may call a Rawlings Company customer service representative to assist you at (800) 928–1279 ext 429.

It is undisputed that the questionnaire was never returned to Unicare or Rawlings.

During February and March of 1998, Rawlings' representative, Mr. McDermott, had three telephone conversations with Cooper Adelstein's father, Kevin Adelstein. In the first two conversations, Kevin Adelstein advised Mr. McDermott that they were thinking of talking with an attorney to evaluate what had happened to their

son. In the third call, Mr. Adelstein advised Mr. McDermott that they had discussed the matter with an attorney, but had not determined that any provider of medical services had been negligent. McDermott Aff. ¶ 9.

On May 7, 1998, the Adelsteins provided Florida Hospital, represented by attorney Robert Hannah, a notice of intent to initiate litigation against Florida Hospital. Docket No. 36, Robert Hannah Depo. Ex. 14. This notice complied with a Florida Statute that requires an investigation and notice to putative defendants prior to the filing of a medical malpractice action. *See* Fla.Stat. §§ 766.106 and 766.206. The statutory procedure requires that a putative plaintiff obtain an expert medical opinion that the putative defendant had been negligent prior to the provision of the statutory notice of intention to file suit. The Adelsteins followed the statutory procedure, and obtained such an expert opinion, prior to providing the notice of intention to file suit against Florida Hospital. *Id.*

On May 14, 1998, Kevin Adelstein advised Mr. McDermott that the Adelstein family had retained counsel in Minneapolis, Minnesota, Kathleen Peterson, and counsel in Miami, Florida, Gary Fox, to advise them as to whether they had any recourse against medical providers arising from their son's injuries. Upon learning this, Mr. McDermott sent both counsel a letter advising them of Unicare's right to subrogation and reimbursement. Enclosed with the letter was an information form about the incident, which the letter asked be filled out and returned to Rawlings. McDermott Aff. ¶ 10, Ex. B and Ex. C. After stating that Unicare had paid medical benefits, and that it had a lien and a claim for reimbursement of the benefits it had paid, the letter included the following:

This lien applies to any amount now due or which may hereafter become payable out of recovery or recoveries collected or to be collected, whether by judgment, settlement or compromise from any party hereby notified.

**No settlement of the claim, which includes medical expenses paid by our client, should be made prior to notifying our office of the potential settlement and reaching in agreement for reimbursement of these benefits.**

Please complete the enclosed information form and return it to me as soon as possible.

Docket No. 37, Ex. B, emphasis added.

Among other things, the information form sought an identification of any health care providers which the family suspected may have acted negligently, so that they could be put on notice of Unicare's claim and reimbursement rights, and an indication as to whether a lawsuit had been filed or demand made upon such parties. McDermott Aff. ¶ 11. The following information was requested as to potentially responsible parties: name; address; insurance company; insurance company telephone number; coverage amount; claim number; defense attorney; and attorney telephone number. *See* McDermott Aff.Ex. C. The information request form included with the May 14, 1998 letter was never completed and returned to Unicare or Rawlings. However, it was returned completely blank almost one year later. McDermott Aff. ¶ 12.

On May 19, 1998, Ms. Peterson (counsel for the Adelsteins in Minnesota) advised Rawlings that further contact regarding this matter should be with attorney Fox in Florida. McDermott Aff. ¶ 13. Rawlings received no communications from the Adelsteins or their counsel from May 19, 1998 until approximately Match 6, 1999, a period of ten months.

It is undisputed that the Adelsteins' counsel received Mr. McDermott's May 14 letter, with the enclosed information request. It also is undisputed that neither the Adelsteins nor their counsel ever provided Unicare or Rawlings with a copy of the notice of intention to initiate litigation or the underlying pre-suit investigation materials, nor did they advise Unicare or Rawlings that they believed that Florida Hospital was guilty of negligence in the provision of medical services to their son until March 1999. Neither Unicare nor Rawlings learned from any other source prior to March 1999 that the Adelsteins had decided that Florida Hospital had been negligent. McDermott Aff. ¶¶ 14, 17; Cummings, Aff. ¶ 8.

### D. *The Settlement Of The Adelsteins' Claim Against Florida Hospital*

On March 1, 1999, the Adelsteins engaged in mediation of their claims against Florida Hospital. Both the Adelsteins and Florida Hospital were· represented by counsel at the mediation. The mediation resulted in a handwritten settlement agreement between the Adelsteins and Florida Hospital, which was signed on March 1, 1999. Hannah Depo. at 9–10; Hannah Depo. Ex. 2. It is undisputed that neither Unicare nor Rawlings had any notice of the mediation until after it had occurred. McDermott Aff. ¶ 18; Cummings Aff. ¶ 8.

The written settlement agreement required that the Adelsteins provide Florida Hospital with "a complete release," and contained the following provision, designated paragraph 3: "[p]laintiff [the Adelsteins] to discharge all pending liens, costs or claims for medical services to exclusion of defendant." Florida Hospital paid the Adelsteins $3.75 million under the settlement. Hannah Depo. Ex. 2. Florida Hospital's attorney, Mr. Hannah, stated that the $3.75 million settlement amount included monies to compensate the Adelsteins fully for all past medical expenses. Hannah Depo. at 30. It was the intention of the settlement to extinguish all present and future claims for past medical expenses, including such claims by third parties against Florida Hospital. *Id.*

In negotiating the settlement, Mr. Hannah was concerned that Florida Hospital be protected from potential claims by Unicare. Hannah Depo. at 23. Consequently, a multi-layer defense to such claims was negotiated and implemented in Florida Hospital's settlement with the Adelsteins. This defense structure included: 1.) all claims of the Adelsteins in the settlement, including prior medical claims and expenses; 2.) the provision of a complete release of all rights and claims held by the Adelsteins, including claims relating to past medical care; 3.) the placing in an escrow/trust account of $142,226.18, the amount of money paid by Unicare for past medical claims; and 4.) a promise by the Adelsteins that they would hold Florida Hospital harmless in the event that Florida Hospital was sued, whether by Unicare or another party, relating to the services it had provided to Cooper. Hannah Depo. at 30–32. The release provided to Florida Hospital by the Adelsteins contains the hold harmless provision, and specifically covers "any claims or lawsuits that may be asserted or brought by any person, firm, corporation, *including but not limited to Unicare.*" *See* Hannah Depo. Ex. 12 (emphasis added).

On March 9, 1999, before the settlement proceeds were distributed, Adelsteins' counsel sent a letter to Mr. Hannah confirming that the Adelsteins' counsel would take $142,226.18 from the settlement proceeds, which amount was "the full amount of the lien claimed by Mass Mutual*Unicare," and hold those segregated funds

"until we have either amicably resolved the matter with Mass Mutual*Unicare or a court has determined their entitlement to any portion of the amount held in trust." Hannah Depo. Ex. 11. The agreement to place these funds in a separate account was clearly part of the settlement structured by the Adelsteins and Florida Hospital, without Unicare's participation, and was funded out of the settlement amount paid by Florida Hospital to the Adelsteins. Docket No. 79, Hearing Transcript at 42 (statement by counsel for the Adelsteins).

The March 9 letter confirmed an understanding between counsel for the Adelsteins and counsel for Florida Hospital that a portion of the funds being paid by Florida Hospital would be specifically set aside to cover Unicare's claim in full. Hannah Depo. Ex. 11; Hannah Depo. at 28, 30. The establishment and funding of this account was part of the process of attempting to extinguish the liens of third parties, including any lien or claim held by Unicare. Hanna Depo. at 31. This was the only amount placed in escrow for third party claims. Attorney Hannah was not aware of any medical insurers or providers other than Unicare which had a potential claim for subrogation or reimbursement. Hanna Depo. at 45.

In the meantime, on March 4, 1999, counsel for the Adelsteins mailed a letter to Rawlings. This was the first communication Rawlings or Unicare had received from the Adelsteins since the receipt of the May 19, 1998 letter from Ms. Peterson. McDermott Aff.Ex. D. That letter advised Rawlings that the Adelsteins had reached a settlement of a claim they had made against Florida Hospital, and asked for a commitment that Unicare would not attempt to assert any lien or reimbursement right as to the settlement proceeds, taking the position that Unicare was not entitled

to any recovery due to the "make whole" doctrine. McDermott Aff. ¶ 15.

In his March 4, 1999 letter, Mr. Fox advised Rawlings that the Adelsteins had settled their lawsuit against Florida Hospital for $3,750,000, that an expert, Dr. Raffa, had rendered an opinion that Cooper Adelstein's economic losses alone were $10,833,941 to $20,042,111, and that Unicare was not entitled to any recovery due to the "make whole" doctrine. This was the first time that Rawlings had been advised of any dollar value of loss in excess of the $142,226.18 that had been paid by Unicare. McDermott Aff. ¶ 20, Ex. D. At no time prior to the receipt of the March 4, 1999 letter from Mr. Fox had Rawlings or Unicare been provided any notice of or information about a claim against Florida Hospital, nor were they afforded the opportunity to comment upon or participate in the mediation or the settlement of the Adelsteins' claims against Florida Hospital. McDermott Aff. ¶ 17–18.

On March 5, 1999—one day after Mr. Fox's letter to Rawlings—Mr. Fox filed a petition with the Circuit Court in Orlando, Florida, seeking approval for the settlement of Cooper's claim against Florida Hospital, in which it was affirmatively represented to the Court that "[f]rom the settlement proceeds Petitioners will satisfy or resolve existing liens for medical services." Docket No. 37, Defendant's Statement of Undisputed Facts, Ex. D. Neither Unicare nor Rawlings were provided a copy of this petition. However, it is undisputed that Adelsteins were fully aware of the Circuit Court proceedings prior to that court's approval of Cooper's settlement. *See* Docket No. 63, Donna Willis (attorney at Rawlings) Aff.Ex. 2; *see also* Docket No. 81, Gary Fox Aff.Ex. 5. Indeed, on March 16, 2000, the Adelsteins' counsel, Mr. Fox, advised Unicare that if Unicare "decides it truly wants to assert a lien in

this case, we will schedule a hearing before Judge Perry, the presiding circuit judge." Docket No. 81, Gary Fox Aff.Ex. 5.

Unicare chose not to intervene in the Circuit Court proceedings, claiming that the court did not have jurisdiction to modify the settlement as it pertained to Unicare. *See* Docket No. 75, November 15, 2000 Hearing Transcript at 63. The petition was handled in the Probate Division of the Circuit Court, which appointed a guardian-ad-litem for Cooper. On March 25, 1999, the Circuit Court approved the settlement Cooper's parents had negotiated on his behalf with Florida Hospital. *See,* Hannah Depo. Ex. 8.

## III. THE LAW

### A. *Standard of Review on Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 593–94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or

on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. If the nonmoving party's response to the summary judgment motion is nothing more than mere conclusory allegations, then the court must enter a summary judgment in the moving party's favor. *See Johnson v. Fleet Finance, Inc.,* 4 F.3d 946 (11th Cir. 1993).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

### B. The "Make–Whole" Doctrine

The "make whole" doctrine is a matter of federal common law in this Circuit. *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir.1997). Under the "make whole" doctrine, an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the excess received over the total amount of his loss. *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir.1989). The "make whole" doctrine exists because parties to an insurance contract do not always explicitly address what happens when the insurer pays less than the insured's total loss, and the insured achieves a recovery from a third party. *Cagle*, 112 F.3d at 1522.

The "make whole" doctrine is a default rule in ERISA cases. *Cagle*, 112 F.3d at 1521; *see Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297 (7th Cir. 1993) (describing the "make whole" doctrine as a "gap filler"); *Barnes v. Independent Auto. Dealers Ass'n*, 64 F.3d 1389, 1394 (9th Cir.1995) (applying the "make whole" doctrine as a default rule). The effect of the doctrine is to imply into ambiguous insurance contracts (including ERISA plans) a default provision governing that situation. *Cagle*, 112 F.3d at 1522. Either the "make whole" doctrine is implied into the plan (the default scenario), or it is not (if there is clear language rejecting it). *Cagle*, 112 F.3d at 1522.

As a default rule, the "make whole" doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss and the plan does not explicitly preclude operation of the doctrine. *Cagle*, 112 F.3d at 1521. Because the "make whole" doctrine is a default rule, the parties can contract out of the doctrine. *Cagle*, 112 F.3d at 1522; *Barnes*, 64 F.3d at 1395. However, general subrogation language does not override the "make whole" doctrine. *See Cagle*, 112 F.3d at 1522 (applying the "make whole" doctrine even though the plan had a right to reimbursement from amounts recovered by suit, settlement or otherwise from any third person or his insurer); *see also Guy*, 877 F.2d at 38–39. An ERISA plan overrides the "make whole" doctrine only if it includes language "specifically allowing the Plan the *right of first reimbursement* out of any recovery the participant was able to obtain even if the participant were not made whole." *See Cagle*, 112 F.3d at 1522 (emphasis added); *Barnes*, 64 F.3d at 1395.

Nothing in the "make whole" doctrine, however, authorizes an insured to

freely and intentionally breach his obligations and duties to the insurer under an insurance contract without consequence. Nothing in the "make whole" doctrine protects an insured from the agreed consequences of his breach. Otherwise, every insured who did not expect to be made whole could freely breach every contractual duty with impunity. Thus, the "make whole" doctrine does not protect an insured who intentionally withholds notification of settlement proceedings in violation of his contractual obligation. The breach may result in personal liability.

Other courts have held that the "make whole" doctrine does not shield a party from the consequences of its own material breach. For example, in *Esparza v. Scott,* 909 S.W.2d 548, 552 (Tex.Ct.App.1995), the court found that abusive conduct of the insured in the settlement process resulted in the "make whole" doctrine not applying. In *Esparza*, the plaintiff's son suffered serious injuries during birth, resulting in medical claims which the insurer paid. The policy had a subrogation clause that required the insured to cooperate and not take any actions to impair the rights of the insurer. Contrary to this contractual agreement, the insured made a claim against a doctor and settled without the insurer's participation. The insurer asserted a right to subrogation from the settlement proceeds, and the insured contested subrogation, asserting that the insured had not been "made whole":

> An insurer's right of subrogation is derivative of the injured party's claim and should not be considered until that party is adequately compensated; however, **the injured party may not impair with impunity the interests of one it has contractually agreed to protect**.... Here, the Esparzas acted without regard for the subrogation rights of Scoot & White by settling with Dr. Orrick for less than his insurance policy

limits, releasing him from all claims, and nonsuiting their claim for past medical expenses. **This Court will not condone a party's acting to wholly compromise the rights of a subrogee and then hiding disingenuously behind the "made whole" doctrine.**

*Id.* at 553, 552 (emphasis added). *See Walker v. Rose,* 22 F.Supp.2d 343 (D.N.J. 1998) (breach of plan provisions for covered person to cooperate with insurer in recovering funds advanced pursuant to a settlement renders the "make whole" doctrine under federal common law inapplicable).

■■■ This Court finds the authorities cited above persuasive and consistent with the holding and principles announced in *Cagle*. Where a party acts without regard for the subrogation rights of the insurer by settling with a negligent tortfeasor for less then his insurance policy limits, or by releasing the tortfeasor from all claims, including past medical expenses, the "make whole" doctrine will not preclude the insurer from seeking the contractually agreed recovery. This Court agrees with the court in *Esparza* that the law does not condone a party's acting to wholly compromise the rights of the subrogee and then hiding behind the "make whole" doctrine.

## IV. APPLICATION

The Adelsteins claim that the "make whole" doctrine prohibits Unicare from asserting its right to subrogation and reimbursement. Specifically, the Adelsteins contend that Unicare's policy contains nothing more than subrogation language, and that Unicare chose not to include language providing it with "first rights to reimbursement."

Unicare has moved for summary judgment, contending that despite the "make whole" doctrine, it is entitled to subroga-

tion and reimbursement as a matter of law. Unicare argues that the "make whole" doctrine does not insulate the Adelsteins from the contractually agreed upon consequences of their material breach of the policy—their failure to provide timely notice of their claims against Florida Hospital and to cooperate with Unicare in the settlement of the claims.[2] This Court agrees.

■ As a matter of law, the Adelsteins materially breached Unicare's insurance policy by engaging in a course of conduct which violated the policy and plan provisions quoted above. The Adelsteins failed to provide Unicare with notice of its claim against Florida Hospital. The Adelsteins failed to provide information to Unicare as affirmatively required by the policy and plan, and which was the subject of two written reminders by Rawlings. The Adelsteins' counsel responded to the requests for information from Unicare and Rawlings only after they had a written settlement agreement with Florida Hospital in hand. Without notice to Unicare, the Adelsteins structured a settlement that provided Florida Hospital with a broad release of all claims for past and future medical expenses—intentionally extinguishing any basis upon which Unicare could have sued Florida Hospital for recovery of the amount that Unicare had paid for past medical expenses. The Adelsteins intended to eliminate a just debt to Unicare, and to keep for themselves $142,226.18, which Unicare had paid for medical services.

■ In this way, the Adelsteins took affirmative action which subverted, impaired, and discharged Unicare's rights of subrogation and reimbursement—actions which violated the explicit terms of the policy and plan. As a direct result of the Adelsteins' conduct, Unicare lost the opportunity to participate in the negotiation and settlement of the Adelsteins' claims against Florida Hospital. By discharging any rights that Unicare may have had, the Adelsteins prejudice Unicare's ability to enforce its rights to subrogation and reimbursement.[3] These actions constitute, as a matter of law, a material breach of the policy. The policy and benefit plan clearly provide the remedy for this material breach:

> Failure of a covered person to give notice to the insurer or to cooperate with the insurer, or a covered person's ac-

2. Unicare also argues that the "make whole" doctrine does not apply for purposes of Unicare's claim, since the Adelsteins recovered, as part of the $3.75 million settlement payment from Florida Hospital, an amount specifically determined by the Adelsteins and Florida Hospital to be the amount of the medical expenses paid by Unicare. Although the Court also finds this argument persuasive, it does not need to reach this issue.

3. The Court rejects the Adelsteins' argument that Unicare was not prejudiced by the breach of contract, because it had an opportunity to intervene (but did not) in the Circuit Court proceedings, prior to that court's approval of Cooper's settlement. See Docket No. 75 at 37 – 39. By the time the settlement agreement was before the Circuit Court, a "settlement" had been reached as between the Adelsteins and Florida Hospital. Unicare was prejudice because it was not able to participate in the negotiations leading to that settlement. Although Unicare could have sought to protect its interest in Circuit Court, such action was not required by the policy or plan. Unicare had already advised the Adelsteins that it was not releasing its lien and claim for recovery of medical expenses. See Docket No. 63, Willis Depo. Ex. 2. Clearly, Unicare is not now foreclosed from asserting its rights to subrogation and reimbursement, as provided for by the policy and plan—particularly, since in the settlement agreement approved by the Circuit Court, the Adelsteins stated that they would satisfy or resolve existing liens for medical services from the settlement proceeds.

tions that prejudice the insurer's rights or interest, will be a material breach of this group policy and result in the covered person being **personally responsible** for reimbursing the insurer.

*See* Docket No. 37, Cummings Aff.Ex. 1 at 102 (emphasis added).

The Court rejects the Adelsteins' argument that the "make whole" doctrine bars reimbursement. Although Unicare chose not to include in the plan an explicit "right to first recovery," Unicare also chose to explicitly include in the plan a requirement that the insured be personally responsible for reimbursement under specific circumstances. The responsibility flows from the breach of the insurance contract.

Assuming that the Adelsteins have not been "made whole",[4] the law does not relieve them of a duty they have contractually assumed—the duty to cooperate and not to prejudice the insurer's rights. The Adelsteins are not free to intentionally breach that contractual obligation and to then claim impunity from breach on the ground that they will never be "made whole." To adopt the Adelsteins' position would allow the affirmative use of the "make whole" doctrine to shield the Adelsteins from the contractually agreed upon consequences of their own material breach of the policy and plan. The Eleventh Circuit decision in *Cagle* does not mandate such a result. The insurance policy and benefit plan here clearly provides the consequences of a material breach of the cooperation and information sharing provisions of the agreements—the Adelsteins become personally liable to Unicare for reimbursement. Nothing in *Cagle* makes such contractual agreements unenforceable under the circumstances presented here. Unicare is entitled to subrogation and reimbursement as a matter of law.

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED,** that the Motion for Summary Judgement filed by Defendant, Unicare Life & Health Insurance Company [Docket No. 46], be **GRANTED.**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Dated: Feb. 7th, 2001.

---

4. Despite this contention, during the November 12, 2000 hearing, counsel for the Adelsteins could not advise the Court of the amount it would take to make the Adelsteins whole. Docket No. 75, Hearing Transcript at 28–32. For purposes of this motion, this Court assumes that the Adelsteins have not been "made whole" for all of their uninsured losses, whatever the dollar value of those losses may be.